DANIEL S. FLOYD, SBN 123819
WILLIAM E. THOMSON, SBN 187912
MICHAEL E. BYERTS, SBN 218946
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
dfloyd@gibsondunn.com

Attorneys for Plaintiffs CASTLE & COOKE
MADERA, INC., a California corporation;
CASTLE & COOKE CALIFORNIA, INC., a
California corporation; AG 1970, INC., a
California corporation, and AG 1971, INC., a
California Corporation,

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASTLE & COOKE MADERA, INC., a California corporation; CASTLE & COOKE CALIFORNIA, INC., a California corporation; AG 1970, INC., a California corporation; AG 1971, INC., a California corporation, | CASE NO. |
| | COMPLAINT FOR: |
| Plaintiff, | (1)    STATUTORY INTERPLEADER [28 U.S.C. § 1335]; AND |
| v. | (2)    DECLARATORY AND INJUNCTIVE RELIEF; [28 U.S.C. § 2201 *et seq.*; 28 U.S.C. § 2361] |
| MACKENZIE PATTERSON FULLER, INC., a California corporation; SUTTER OPPORTUNITY FUND 3, LLC, a California limited liability company; MP FALCON FUND, LLC, a California limited liability company; MP FALCON GROWTH FUND 2, LLC a California limited liability company; MPF DEWAAY PREMIER FUND LLC, a California limited liability company; MP INCOME FUND 17, LLC, a California limited liability company; MPF INCOME FUND 20, LLC, a California limited liability company; MP INCOME FUND 12, LP, a California limited partnership; MP VALUE FUND 6, LLC, a California limited liability company; MACKENZIE PATTERSON SPECIAL FUND 6, LLC, a California limited liability company; MACKENZIE PATTERSON SPECIAL | |

1  FUND 6-A, LLC, a California limited
   liability company; MACKENZIE
2  PATTERSON SPECIAL FUND 7, LLC, a
   California limited liability company;
3  ACCELERATED HIGH YIELD
   INSTITUTIONAL FUND, LTD, LP, a
4  California limited partnership;
   ACCELERATED HIGH YIELD
5  INSTITUTIONAL INVESTORS, LTD,
   LP, a California limited partnership;
6  MACKENZIE SPECIFIED INCOME
   FUND, LP, a California limited
7  partnership; LEON G. FETERL and
   MARILYN R. FETERL, individuals, as
8  trustees of the LEON G. FETERL
   LIVING TRUST; CHRISTOPHER
9  HAYES, an individual; WALTER
   HAYES III, an individual; BARBARA J.
10 HERROLD, an individual; LASALLE
   NATIONAL TRUST, an Illinois business
11 entity, as the executor of the ESTATE OF
   LILA RADWAY, an individual; ALEX
12 DONNER, an individual; JOHN L.
   FRENCH, an individual, as the personal
13 representative of the ESTATE OF
   HOWARD H. FITZGERALD II;
14 ANCHOR TRUST, a Minnesota entity, as
   trustee of the ROBERT E. HAUGAN
15 REVOCABLE TRUST; GREGORY J.
   GUGGEMOS, an Individual, as trustee of
16 the WILBUR C. HERBST TRUST;
   JOHN MARSHALL, an individual;
17 GWEN P. THOMPSON, an individual, as
   personal representative of the estate of
18 DAGMAR B. NEWSTROM; ANN
   KATHLEEN PETERS, an individual;
19 PARAMOUNT COFFEE CO., INC., a
   Michigan corporation; MARTIN
20 SCHLISSBERG, an individual, as trustee
   of the ISF/PCC TRUST PARAMOUNT
21 COFFEE CO, INC., and DOES 1-10;

22           Defendants.

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## JURISDICTION

1.    This Court has jurisdiction over this statutory interpleader action pursuant to 28 U.S.C. § 1335(a), because the matter in controversy exceeds the sum of $500 and at least two of the adverse claimants are citizens of different states.

## VENUE

2.    Venue is proper in the Northern District of California because Defendants MacKenzie Patterson Fuller, Inc., Sutter Opportunity Fund 3, LLC; MP Falcon Fund, LLC; and MP Falcon Growth Fund 2, LLC reside and do business in this District (28 U.S.C. § 1397).

## IDENTIFICATION OF PARTIES

3.    Plaintiff Castle & Cooke Madera, Inc. ("Castle & Cooke Madera") is a corporation organized under the laws of the State of California, with its principal place of business in the State of California.

4.    Plaintiff Castle & Cooke California, Inc. ("Castle & Cooke California") is a corporation organized under the laws of the State of California, with its principal place of business in the State of California.

5.    Plaintiff AG 1970, Inc. is a corporation organized under the laws of the State of California, with its principal place of business in the State of California.

6.    Plaintiff AG 1971, Inc. is a corporation organized under the laws of the State of California, with its principal place of business in the State of California.

7.    Upon information and belief, Defendant MacKenzie Patterson Fuller, Inc. ("MPF") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

8.    Upon information and belief, Defendant Sutter Opportunity Fund 3, LLC ("Sutter Opportunity") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

9.     Upon information and belief, Defendant MP Falcon Fund, LLC ("MP Falcon Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

10.     Upon information and belief, Defendant MP Falcon Growth Fund 2, LLC ("MP Falcon Growth Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

11.     Upon information and belief, Defendant MPF DeWaay Premier Fund LLC ("MPF DeWaay") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

12.     Upon information and belief, Defendant MP Income Fund 17, LLC ("MP Income Fund 17") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

13.     Upon information and belief, Defendant MPF Income Fund 20, LLC ("MP Income Fund 20") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

14.     Upon information and belief, Defendant MP Income Fund 12, LP ("MP Income Fund 12") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

15.     Upon information and belief, Defendant MP Value Fund 6, LLC ("MP Value Fund 6") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

16.     Upon information and belief, Defendant MacKenzie Patterson Special Fund 6, LLC ("Special Fund 6") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

17.     Upon information and belief, Defendant MacKenzie Patterson Special Fund 6-A, LLC ("Special Fund 6-A") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

18.     Upon information and belief, Defendant MacKenzie Patterson Special Fund 7, LLC ("Special Fund 7") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

19.     Upon information and belief, Defendant Accelerated High Yield Institutional Fund, Ltd, LP ("Accelerated High Yield Institutional Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

20.     Upon information and belief, Defendant Accelerated High Yield Institutional Investors, Ltd, LP ("Accelerated High Yield Institutional Investors Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

21.     Upon information and belief, Defendant MacKenzie Specified Income Fund, LP, ("MacKenzie Specified Income Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

22.     Upon information and belief, Defendants Leon G. & Marilyn R. Feterl ("Feterls") are individuals residing in the State of South Dakota.  The Feterls are trustees of the Leon G. Feterl Living Trust ("Feterl Trust").

23.     Upon information and belief, Defendant Christopher Hayes ("Christopher Hayes") is an individual residing in the State of Texas.

24.     Upon information and belief, Defendant Walter Hayes III ("Walter Hayes") is an individual residing in the State of Texas.

25.      Upon information and belief, Defendant Barbara J. Herrold ("Herrold") is an individual residing in the State of Indiana.

26.     Upon information and belief, Defendant LaSalle National Trust ("LaSalle") is a business entity organized under the laws of the State of Illinois, with its principal place of business in the State of Illinois.  LaSalle is the executor to the

Estate of Lila Radway ("Radway"), an individual who resided in the State of Michigan until her death.

27.    Upon information and belief, Defendant Alex Donner ("Donner") is an individual residing in the state of Maryland.

28.    Upon information and belief, Defendant John L. French ("French") is an individual residing in the State of Maine.  French is the personal representative of the Estate of Howard H. Fitzgerald II ("Fitzgerald"), an individual who resided in the State of Maine until his death.

29.    Upon information and belief, Defendant Anchor Trust is a division of Anchor Bank ("Anchor").  Anchor is a business entity organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota. Anchor is the trustee of the Robert E. Haugan Revocable Trust ("Haugan Trust").

30.    Upon information and belief, Defendant Gregory G. Guggemos ("Guggemos") is an individual residing in the State of Michigan. Upon information and belief, Guggemos is the trustee in interest to the Wilbur C. Herbst Trust ("Herbst Trust").

31.    Upon information and belief, Defendant John Marshall ("Marshall") is an individual residing in the State of Wisconsin.

32.    Upon information and belief, Defendant Gwen P. Thompson ("Thompson") is an individual residing in the State of Minnesota.  Thompson is the personal representative of the Estate of Dagmar B. Newstrom ("Newstrom"), an individual who resided in the State of Minnesota until his death.

33.    Upon information and belief, Defendant Ann Kathleen Peters ("Peters") is an individual residing in the State of Illinois.

34.    Upon information and belief, Defendant Paramount Coffee Co., Inc. ("Paramount Coffee") is a business entity organized under the laws of the State of Michigan, with its principal place of business in the State of Michigan.

Gibson, Dunn &
Crutcher LLP

COMPLAINT FOR:  (1) STATUTORY INTERPLEADER; AND (2) DECLARATORY AND INJUNCTIVE RELIEF

35.     Upon information and belief, Defendant Martin Schlissberg ("Schlissberg") is an individual residing in the State of Michigan. Upon information and belief, Schlissberg is the trustee of the ISF/PCC Trust Paramount Coffee Co, Inc. ("Paramount Trust").

36.     The true names and capacities of the defendants named herein as Does 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are not known to Plaintiffs Castle & Cooke Madera, Castle & Cooke California, AG 1970, Inc., or AG 1971, Inc. (collectively "Plaintiffs") and said defendants, therefore, are sued under such fictitious names.  Plaintiffs will seek leave of Court, if necessary, to amend this Complaint to show the true names and capacities when the same have been ascertained.

37.     Defendants MPF; Sutter Opportunity Fund; MP Falcon Fund; MP Falcon Growth Fund 2; MPF Dewaay, MP Income Fund 17; MPF Income Fund 20; MP Income Fund 12; MP Value Fund 6; Special Fund 6; Special Fund 6-A; Special Fund 7; Accelerated High Yield Institutional Fund; Accelerated High Yield Institutional Investors; MacKenzie Specified Income Fund, LP, are all entities affiliated with Mackenzie Patterson Fuller, Inc., and accordingly are referred to collectively as "MPF & Affiliates."

38.     The remaining defendants are all individuals or entities that have been investors in the partnership interests at stake in this litigation, and accordingly are referred to collectively as the "Individual Owners."

## INTRODUCTION

39.     Despite the fairly lengthy list of parties, the basic facts and issues this Action presents are both simple and straightforward.  This case involves a dispute over the rightful ownership of partnership units, and which of the competing claimants was entitled to tender those units for acquisition *at their full value* in a tender offer by plaintiff Castle & Cooke Madera.

40.    On the one hand, there are the Individual Owners, many of whom have, directly or indirectly, held the units since the early 1970s.

41.    On the other hand, there is MPF and its affiliated entities, which claim to have acquired ownership of the disputed units by means of their own tender offers during the past year—for amounts that represent but a small fraction of their appraised value.

42.    Plaintiffs contend that the purported assignments from the Individual Owners to MPF & Affiliates are legally invalid, because MPF's tender offers contravened the federal securities laws and suffered from numerous other defects, as detailed below.  But because both MPF and the Individual Owners presently claim, or there is a real and reasonable risk that they will claim in the future, to be entitled to ownership interests in the same partnership units, Plaintiffs bring this Action in interpleader to determine the units' rightful owners, and to determine which of the vying claimants may legitimately tender units in Castle & Cooke Madera's full value tender offer.  In addition, because MPF & Affiliates at one point attempted to have transferred to them units purportedly "assigned" to them by individuals who in fact had previously sold all their units to the Managing Partners and were no longer unit-holders, Plaintiffs seek a declaration of rights vis-à-vis such units.

## FACTUAL ALLEGATIONS

**A.    The Apache Grove Land Program 1970 and Apache Grove Land Program 1971.**

43.    In 1970, Apache Corporation formed a Minnesota partnership, Apache Grove Land Program 1970 ("Apache Grove Land 1970"), to own, operate, and develop land in Madera County, California initially for agricultural use.

44.    Plaintiff AG 1970, Inc. has been the managing partner of Apache Grove Land 1970 since at least 1987.

Gibson, Dunn & Crutcher LLP

COMPLAINT FOR:  (1) STATUTORY INTERPLEADER; AND (2) DECLARATORY AND INJUNCTIVE RELIEF

45.    Defendants the Feterls, Christopher Hayes, Walter Hayes, Herrold, Paramount Coffee and Radway (collectively the "1970 Owners") acquired partnership units in Apache Grove Land 1970.

46.    In 1971, Apache Corporation formed a Minnesota partnership, Apache Grove Land Program 1971 ("Apache Grove Land 1971"), to own, operate, and develop land in Madera County, California initially for agricultural use.

47.    Plaintiff AG 1971, Inc. has been the managing partner of Apache Grove Land 1971 since at least 1987.

48.    Defendants Haugan Trust, Donner, Fitzgerald, Herbst Trust, Marshall, Newstrom, Paramount Trust and Peters (collectively the "1971 Owners") acquired partnership units in Apache Grove Land 1971.

**B.    MPF & Affiliates Make a Purported Tender Offer for Limited Partnerships Interests in Apache Grove Land 1970 and Apache Grove Land 1971.**

49.    On or about September 27, 2004, MPF and unidentified "affiliates" made a purported tender offer to the holders of partnership interests in Apache Grove Land 1970, including the 1970 Owners.  MPF & Affiliates offered to purchase the interests for the price of $32,500 per unit—a small fraction of the appraised value of the units ("First Apache Grove Land 1970 Tender Offer").

50.    Also on or about September 27, 2004, MPF, and its unidentified "affiliates" made a purported tender offer to the holders of partnership interests in Apache Grove Land 1971, including the 1971 Owners.  MPF & Affiliates offered to purchase their interests for the price of $18,000 per unit—a small fraction of the appraised value of the units ("First Apache Grove Land 1971 Tender Offer").

51.    These tender offers expired at midnight on October 29, 2004.

COMPLAINT FOR:  (1) STATUTORY INTERPLEADER; AND (2) DECLARATORY AND INJUNCTIVE RELIEF

Gibson, Dunn & Crutcher LLP

**C.    The 1970 Owners and the 1971 Owners Allegedly Tender Their Interests to MPF & Affiliates.**

52.    MPF contends that, in response to the First Apache Grove Land 1970 Tender Offer, the 1970 Owners agreed to sell their partnership units in Apache Grove Land 1970 to MPF & Affiliates.

53.    MPF further contends that, in response to the First Apache Grove Land 1971 Tender Offer, the 1971 Owners agreed to sell their partnership units in Apache Grove Land 1971 to MPF & Affiliates.

54.    Plaintiffs contend, however, on information and belief, that at least some of the 1970 Owners and the 1971 Owners offered to sell their partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 to MPF after MPF's first tender offers had expired, and that some or all of the purported assignments are legally invalid.

55.    In addition, Defendants Marshall, Newstrom, and Peters sold all their units to the Managing Partners well before September 2004.  Following the First Tender Office, MPF & Affiliates tendered purported assignment forms for Defendants Marshall, Newstrom, and Peters.  On information and belief, MPF & Affiliates solicited assignments from Defendants Marshall, Newstrom, and Peters because MPF & Affiliates used an outdated unit-holder list they obtained from Ira Gaines, an individual who has been the subject of cease and desist actions by the Securities & Exchange Commission and an Agreed Final Judgment entered on January 6, 2004 by the United States District Court for the District of Arizona.

**E.    The Managing Partners Inform MPF That its First Tender Offers Were Invalid; MPF Purports To "Extend" the Tender Offers.**

56.    On or about September 28, 2004, MPF notified AG 1970, Inc. and AG 1971, Inc. ("Managing Partners") that it intended at some point to make a tender offer for partnership units in Apache Grove Land 1970 and Apache Grove Land 1971.  MPF

never notified the Managing Partners that it had made a tender offer, and never sent the Managing Partners copies of the tender offer documents.

57.    On or about October 25, 2004, the Managing Partners received from MPF purported assignment forms from some of the 1970 Owners and the 1971 Owners.

58.    When the Managing Partners reviewed the First Apache Grove Land 1970 Tender Offer, and the First Apache Grove Land 1971 Tender Offer (collectively "First Tender Offers"), they noticed numerous, serious omissions and other problems in each that rendered the First Tender Offers invalid under the federal securities laws governing such tender offers.

59.    Without limitation, those omissions and other problems included the fact that the First Tender Offers failed to disclose, or only inadequately disclosed:

a.    The identity of the true bidder.  Instead, they stated only that unidentified MPF "affiliates" were the buyers.

b.    The methodology used to determine the purchase price offered.

c.    The prices at which recent sales of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 had been made.

d.    Whether owners of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 could withdraw their tenders, and whether they could withdraw following an extension of the deadline for the First Tender Offers.

e.    Whether tendered partnership units would be accepted on a pro rata basis if the First Tender Offers were over-subscribed.

f.    That Apache Grove Land 1970 and Apache Grove Land 1971 would send the owners of partnership units additional materials relating to the First Tender Offers.

g.    The circumstances under which the First Tender Offers could be extended.

h.    An adequate timeline for the payment of tendered units.

i.    The risks of the transaction in the First Tender Offers.

j.   The specific plans that MPF and its unidentified affiliates had if the target number of units were tendered.

k.   The information required by Items 14 and 15 of Securities & Exchange Commission Form S-11.

l.   The relevant tax consequences of the First Tender Offers.

m.  The amount of any transfer or processing fees that the actual bidders would pay MPF or that would be deducted from the purchase price.

60.    The First Tender Offers also suffered from the following additional deficiencies:

a.   They did not summarize the Managing Partner's reports detailing the valuation of the property owned by Apache Grove Land 1970 and Apache Grove Land 1971, or even disclose how to obtain copies of those reports.

b.   The assignment forms attached to the First Tender Offers contained a purported agreement to submit to binding arbitration.  Such agreements are against public policy and invalid in this context.  The assignment forms attached to the First Tender Offers contained a purported agreement that the arbitrator would apply California law in connection with the binding arbitration agreement.  But federal securities law applies to disputes arising from the First Tender Offers, which preempts California law.

61.    Upon information and belief, the foregoing deficiencies violate the federal securities laws governing the First Tender Offers, including the Securities Exchange Act of 1934 ("Exchange Act") section 10(b) [15 U.S.C. § 78j(b) (2000)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5 (1951)], Exchange Act § 14(e) [15 U.S.C. § 78n(e) (1998)] and Rule 14e-1 promulgated thereunder [17 C.F.R. §240.10e-1 (1999)], as explicated by the Securities & Exchange Commission's July 24, 2000 Interpretive Release on Mini-Tender Offers and Limited Partnership Tender Offers.

62.    In or about November 2004, Defendants MacKenzie Patterson, MP Falcon Fund, MP Falcon Growth Fund, MPF DeWaay, MP Income Fund 17, MP

Income Fund 20, MP Income Fund 12, MP Value Fund 6, Special Fund 6, Special Fund 6-A, Special Fund 7, Accelerated High Yield Institutional Fund, Accelerated High Yield Institutional Investors Fund, and MacKenzie Special Income Fund (collectively "Initial MPF Buyers"), sent a letter to the holders of partnership units in Apache Grove Land 1970, including the 1970 Owners, purporting to extend the First Apache Grove Land 1970 Tender Offer to November 30, 2004 ("November 2004 Apache Grove Land 1970 Extension").

63.    In or about November 2004, the Initial MPF Buyers sent a letter to the holders of partnership units in Apache Grove Land 1971, including the 1971 Owners, purporting to extend the First Apache Grove Land 1971 Tender Offer to November 30, 2004 ("November 2004 Apache Grove Land 1971 Extension").

64.    When the Managing Partners reviewed the November 2004 Apache Grove Land 1970 Extension and the November 2004 Apache Grove Land 1971 Extension (collectively "November 2004 Extensions"), they noticed several deficiencies in each that rendered the purported extensions of the First Tender Offers invalid.  Without limitation, those deficiencies included:

a.  The November 2004 Extensions were not issued by 9 a.m., Eastern Time on the next business day after the First Tender Offers expired (i.e., October 30, 2004), accordingly, under federal securities laws, the First Tender Offers had expired and could not be "extended."  17 C.F.R. §240.10e-1(d).

b.  The purported extensions had not been publicized as required under the federal securities laws.  17 C.F.R. §240.10e-1(d).

c.  The November 2004 Extensions did not disclose the number of units tendered in response to the First Tender Offers.

d.  The November 2004 Extensions did not disclose the identity of the true bidder.  Although listing all of the Initial MPF Buyers, the November 2004 Extensions did not disclose who owned those entities, the source of the funds to be used, or

whether any of the Initial MPF Buyers had agreed to sell tendered units to another party.

        e.  The November 2004 Extensions did not disclose whether the capital and funds allegedly available for purchase of tendered units was held in liquid assets, or some other form.  And the November 2004 Extensions did not indicate whether the Initial MPF Buyers had distinct funds available for each of the First Tender Offers or whether the November 2004 Extensions referred to the same funds.

        f.  The November 2004 Extensions did not disclose how units tendered would be allocated among the Initial MPF Buyers.

        g.  On information and belief, the November 2004 Extensions did not attach the assignment forms and transmittal letters that MPF included in the First Tenders Offers.

        65.    Upon information and belief, the foregoing deficiencies violate the federal securities laws governing the November 2004 Extensions, including Exchange Act section 10(b) [15 U.S.C. § 78j(b) (2000)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5 (1951)], Exchange Act § 14(e) [15 U.S.C. § 78n(e) (1998)] and Rule 14e-1 promulgated thereunder [17 C.F.R. §240.10e-1 (1999)], as explicated by the Securities & Exchange Commission's July 24, 2000 Interpretive Release on Mini-Tender Offers and Limited Partnership Tender Offers.

        66.    On or about December 16, 2004, MPF informed the Managing Partners that it contended the 1970 Owners and the 1971 Owners had agreed to transfer their partnership units to the Initial MPF Buyers.

        67.    The Initial MPF Buyers further requested that the Managing Partners recognize MP Falcon Growth Fund as the owner of 2.9570 units of Apache Grove Land 1970, transferred from the 1970 Owners, and recognize MP Falcon Fund as the owner of 4.3608 units of Apache Grove Land 1971, transferred from the 1971 Owners.

        68.    When the Managing Partners reviewed the transfer documents from the First Apache Grove Land 1970 Tender Offer and the First Apache Grove Land 1971

Tender Offer, they concluded that the purported transfers were not valid because they had numerous deficiencies and errors in addition to the legal deficiencies in the tender offers identified above.  Without limitation, those additional deficiencies included:

    a.  misspelled or incorrect names of unitholders;

    b.  incorrect taxpayer identification numbers or social security numbers;

    c.  failure to state the number of units tendered to the Initial MPF Buyers;

    d.  incorrect statement of the number of units tendered;

    e.  assignments dated after the First Tender Offers expired.

    f.  no proof that the person signing the assignment had the authority to approve the assignment;

    g.  apparently altered documents; and

    h.  submission of transfer documents from people who no longer owned any units.

69.    After receiving notice of the First Tender Offers and the November 2004 Extensions, the Managing Partners notified MPF of the deficiencies identified above in the First Tender Offers, the November 2004 Extensions and the assignments that MPF had submitted to the Managing Partners.

**F.    MPF makes a Second Tender Offer.**

70.    On or about June 29, 2005, the Initial MPF Buyers and Sutter Opportunity (collectively "MPF & Affiliates") made a second purported tender offer to the holders of limited partnership interests in Apache Grove Land 1970, including the 1970 Owners, to purchase their interests for the price of $32,500 per unit ("Second Apache Grove Land 1970 Tender Offer")—again, a small fraction of the appraised value of the partnership units.

71.    On or about June 29, 2005, MPF & Affiliates made a second purported tender offer to the holders of limited partnership interests in Apache Grove Land 1971, including the 1971 Owners, to purchase their interests for the price of $18,000 per unit

Gibson, Dunn &
Crutcher LLP

COMPLAINT FOR:  (1) STATUTORY INTERPLEADER; AND (2) DECLARATORY AND INJUNCTIVE RELIEF

("Second Apache Grove Land 1971 Tender Offer")—again, a small fraction of the appraised value of the partnership units.

72.    Upon information and belief, MPF sent letters and/or made oral statements to the 1970 Owners and the 1971 Owners who had tendered their shares to MPF & Affiliates in the First Apache Grove Land 1970 Tender Offer and the First Apache Grove Land 1971 Tender Offer that stated or implied that the 1970 Owners and the 1971 Owners were legally required to re-tender their partnership units to MPF in connection with the Second Apache Grove Land 1970 Tender Offer and Second Apache Grove Land 1971 Tender Offer.

**G.    Some 1970 Owners and 1971 Owners Allegedly Re-Tender Their Partnership Units to MPF in Response to the Second Tender Offers.**

73.    MPF & Affiliates contend that certain of the 1970 Owners and the 1971 Owners re-tendered their partnership units in Apache Grove Land 1970 and Apache Grove Land 1970 in response to the Second Apache Grove Land 1970 Tender Offer and the Second Apache Grove Land 1971 Tender Offer.

74.    Upon information and belief, some or all of the 1970 Owners and the 1971 Owners offered to sell MPF & Affiliates their partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 only as a result of MPF's statements in connection with the Second Tender Offers that said or implied that they were legally required to re-tender their interests.

**H.    Castle & Cooke Madera Makes Its Own Tender Offer At Full Value.**

75.    In connection with the 2004 Annual Report on Apache Grove Land 1970 and Apache Grove Land 1971, an independent appraisal was conducted of the value of the land owned by Apache Grove Land 1970 and Apache Grove Land 1971, which consists of land developed for agricultural purposes, some of which is earmarked for development.

76.    Apache Grove Land 1970 owned approximately 2,449 acres of land as of December 31, 2004.  The independent appraisal concluded that the land held by the

Apache Grove Land 1970 partnership was worth $109,854 per partnership unit. The appraised value of Apache Grove Land 1970's land and other tangible assets, when combined with certain balance sheet adjustments yielded a total valuation of the units of $121,919 per unit.

77.    Apache Grove Land 1971 owned approximately 1,855 acres as of December 31, 2004. The independent appraisal concluded that the land held by the Apache Grove Land 1971 partnership was worth $72,596 per partnership unit. The appraised value of Apache Grove Land 1971's land and other tangible assets, when combined with certain balance sheet adjustments yielded a total valuation of the units of $78,757 per unit.

78.    As a result of the appraisals of Apache Grove Land 1970 and Apache Grove Land 1971, the Managing Partners concluded that the partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 were worth substantially more than MPF was offering in its tender offers.

79.    Consequently, on or about July 13, 2005, the Managing Partners sent a letter to the owners of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 notifying them that their units were worth substantially more than MPF was offering. The Managing Partners therefore recommended that the recipients reject MPF's tender offers. In addition, the Managing Partners notified the owners of partnership units that Castle & Cooke California or one of its affiliates would be making a tender offer of its own that would be significantly more attractive than the offer of MPF & Affiliates.

80.    On or about July 25, 2005, Castle & Cooke California sent a letter to the owners of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 that it intended to make a tender offer for those interests at their full value.

81.    On or about August 17, 2005, Castle & Cooke Madera, an affiliate of Castle & Cooke California, made a tender offer to the owners of partnership units in Apache Grove Land 1970, to purchase their interests for the appraised value of each

unit: $121,919 per unit ("Castle & Cooke Apache Grove Land 1970 Tender Offer"). These are the same units that MPF & Affiliates offered to purchase for $32,500 per unit.

82.     On or about August 17, 2005, Castle & Cooke Madera made a tender offer to the owners of partnership units in Apache Grove Land 1971, to purchase their interests for the appraised value of each unit: $78,757 per unit ("Castle & Cooke Apache Grove Land 1971 Tender Offer").  These are the same units that MPF & Affiliates offered to purchase for $18,000 per unit.

83.     On information and belief, MPF & Affiliates threatened to sue persons who had tendered in the first MPF tender offers, but not the second, if they tendered in the Castle & Cooke Tender Offer.

I.     **Castle & Cooke Madera Receives Conflicting Tenders from the 1970 Owners, the 1971 Owners and MPF.**

84.     In response to the Castle & Cooke Apache Grove Land 1970 Tender Offer, Castle & Cooke Madera received purported tenders for, among others, the same partnership units in Apache Grove Land 1970 from both MPF and some of the 1970 Owners.

85.     Castle & Cooke Madera has thus received conflicting claims for payment in response to the Castle & Cooke Apache Grove Land 1970 Tender Offer.

86.     In response to the Castle & Cooke Apache Grove Land 1971 Tender Offer, Castle & Cooke Madera received purported tenders for the same partnership units in Apache Grove Land 1971 from both MPF & Affiliates and some of the 1971 Owners.

87.     Castle & Cooke Madera has thus received conflicting claims for payment in response to the Castle & Cooke Apache Grove Land 1971 Tender Offer.

88.     Moreover, due to the serious omissions alleged above in paragraphs 63-67, upon information and belief, some, or all, of the assignments that MPF & Affiliates have tendered to Castle & Cooke Madera are legally invalid.  Castle & Cooke Madera

or the Managing Partners might therefore receive future claims from the 1970 Owners or 1971 Owners who did not tender their partnership units to Castle & Cooke Madera under the two Castle & Cooke tender offers.  In addition, Castle & Cooke Madera or the Managing Partners might receive future claims respecting those units purportedly tendered to MPF & Affiliates in connection with the First Tender Offer by individuals and entities that had previously sold all their units to the Managing Partners, or respecting those units purportedly tendered in MPF & Affiliates' First Tender Offer, but not in the Second Tender Offer.

## **CLAIM ONE**

### **(Statutory Interpleader, 28 U.S. § 1335)**

89.     Plaintiffs reallege paragraphs 1 through 88 inclusive.

90.     Castle & Cooke Madera offered to purchase partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 as a result of the Castle & Cooke Apache Grove Land 1970 Tender Offer and Castle & Cooke Apache Grove Land 1971 Tender Offer.

91.     Castle & Cooke Madera has received conflicting claims to payment in response to those tender offers.  Certain of the 1970 Owners claim the right to payment under the Castle & Cooke Apache Grove Land 1970 Tender Offer for partnership interests that MPF & Affiliates claim have been transferred to them and which they also tendered in response to the Castle & Cooke Apache Grove Land 1970 Tender Offer.  Similarly, certain of the 1971 Owners claim the right to payment under the Castle & Cooke Apache Grove Land 1971 Tender Offer for partnership interests that MPF & Affiliates claim have been transferred to them and which they also tendered in response to the Castle & Cooke Apache Grove Land 1971 Tender Offer.

92.     Paying either set of claimants presents a real and reasonable risk of multiple liability for Castle & Cooke Madera because the other parties could still claim the right to payment due to the conflicting claims of ownership.

93.    Paying the MPF & Affiliates claims for units that the 1970 Owners did not tender to Castle & Cooke Madera also presents a real and reasonable risk of multiple liability for Castle & Cooke Madera because those 1970 Owners could still claim ownership of their partnership units on the ground that their assignments to MPF were not valid.

94.    Paying the MPF & Affiliates claims for units that the 1971 Owners did not tender to Castle & Cooke Madera also presents a real and reasonable risk of multiple liability for Castle & Cooke Madera because those 1971 Owners could still claim ownership of their partnership units on the ground that their assignments to MPF were not valid.

95.    Plaintiffs are depositing $ 618,615.54 with the Court, concurrently with the filing of this Complaint as the amount in dispute, and for which a real and reasonable risk of multiple liability for Castle & Cooke Madera exists.

## CLAIM TWO
### (For Declaratory Relief and Injunctive Relief)

96.    Plaintiffs reallege paragraphs 1 through 92 inclusive.

97.    An actual and justiciable controversy presently exists between Plaintiffs, MPF, the 1970 Owners and the 1971 Owners, in that both MPF & Affiliates and the 1970 Owners and 1971 Owners claim the right to payment by Castle & Cooke Madera for their alleged ownership and tenders of partnership interests in Apache Grove Land 1970 and Apache Grove Land 1971.  Pursuant to 28 U.S.C. §§ 2201 & 2202, Plaintiffs respectfully request that this Court declare the rights and legal obligations of Plaintiffs, MPF & Affiliates, the 1970 Owners and the 1971 Owners with respect to the Castle & Cooke Apache Grove Land 1970 Tender Offer and the Castle & Cooke Apache Grove Land 1971 Tender Offer.

98.    An actual and justiciable controversy also presently exists between Plaintiffs, MPF & Affiliates, the 1970 Owners and the 1971 Owners, in that Plaintiffs

COMPLAINT FOR:  (1) STATUTORY INTERPLEADER; AND (2) DECLARATORY AND INJUNCTIVE RELIEF

allege that some or all of the assignments to MPF & Affiliates signed by the 1970 Owners and the 1971 Owners are invalid.  Pursuant to 28 U.S.C. §§ 2201 & 2202, Plaintiffs respectfully request that this Court declare the rights and legal obligations of Plaintiffs, MPF & Affiliates, the 1970 Owners and the 1971 Owners with respect to the 1970 Owners partnership units in Apache Grove Land 1970, and the 1971 Owners partnership units in Apache Grove Land 1971.

99.    MPF, Suttor Opportunity, MP Falcon Fun and MP Falcon Growth Fund 2 (collectively "MacKenzie Plaintiffs") filed suit against Apache Grove Land Program 1970 (erroneously sued as Grove Land Program 1970, A Limited Partnership), Apache Grove Land Program 1971 (erroneously sued as Grove Land Program 1971, A Limited Partnership), and the Managing Partners' parent corporation, Dole Food Company, Inc. in the Superior Court for the County of Los Angeles on October 6, 2005, LASC Case Number BC341027.  Pursuant to 28 U.S.C. § 2361, Plaintiffs seek an order preliminarily and permanently enjoining the Superior Court for the County of Los Angeles from proceeding with that suit.  Pursuant to 28 U.S.C. § 2361, Plaintiffs also seek an order preliminarily and permanently enjoining MPF & Affiliates, collectively and individually, from initiating or prosecuting any lawsuit against Apache Grove Land 1970, AG 1970, Inc, Apache Grove Land 1971, AG 1971, Inc., Castle & Cooke California, Castle & Cooke Madera, or Dole Food Company, Inc. concerning the First Apache Grove Land 1970 Tender Offer, the First Apache Grove Land 1971 Tender Offer, the Second Apache Grove Land 1970 Tender Offer, the Second Apache Grove Land 1971 Tender Offer, the Castle & Cooke Apache Grove Land 1970 Tender Offer, or the Castle & Cooke Apache Grove Land 1971 Tender Offer.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

A.    For discharge of liability under the Castle & Cooke Apache Grove Land 1970 Tender Offer and Castle & Cooke Apache Grove Land 1971 Tender Offer;

Gibson, Dunn & Crutcher LLP

B.     For a judicial declaration of the rights and legal obligations of Plaintiffs, MPF & Affiliates, the 1970 Owners and the 1971 Owners with respect to the Castle & Cooke Apache Grove Land 1970 Tender Offer and Castle & Cooke Apache Grove Land 1971 Tender Offer;

C.     For a preliminary and permanent injunction against the Superior Court for the County of Los Angeles from proceeding with LASC Case Number BC341027, filed by the MacKenzie Plaintiffs (who are Defendants in this Action) against Apache Grove Land 1970, Apache Grove Land 1971, and Dole Food Company, Inc.;

D.     For a preliminary and permanent injunction against Defendants MPF & Affiliates, collectively and individually, preventing them from initiating or prosecuting any lawsuit against Apache Grove Land 1970, AG 1970, Inc., Apache Grove Land 1971, AG 1971, Inc., Castle & Cooke Madera, Castle & Cooke California or Dole Food Company, Inc. concerning the First Apache Grove Land 1970 Tender Offer, the First Apache Grove Land 1971 Tender Offer, the Second Apache Grove Land 1970 Tender Offer, the Second Apache Grove Land 1971 Tender Offer, the Castle & Cooke Apache Grove Land 1970 Tender Offer, or the Castle & Cooke Apache Grove Land 1971 Tender Offer;

E.     For all costs of suit incurred herein;

F.     For reasonable attorneys' fees incurred herein pursuant to applicable

Gibson, Dunn & Crutcher LLP

20

contract, statute or legal doctrine, if any; and

G.    For such other and further relief as the Court may deem just and proper.

DATED:  December 20, 2005

GIBSON, DUNN & CRUTCHER LLP
James J. Moloney
William E. Thomson
Michael E. Byerts

By:  _____/s/ Michael Byerts_____
            Michael E. Byerts

Attorneys for Plaintiffs CASTLE & COOKE
MADERA, INC., a California corporation;
CASTLE & COOKE CALIFORNIA, INC., a
California corporation; AG 1970, INC., a
California corporation, and AG 1971, INC., a
California corporation

## CIVIL L.R. 3-16 CERTIFICATION

Pursuant to Civil L.R. 3-16 the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that the subject matter in a party that could be substantially affected by the outcome of this proceeding:

1.      Dole Food Company, Inc. (parent corporation of AG 1970, Inc. and AG 1971, Inc.);

2.      Castle & Cooke, Inc. (parent corporation of Castle & Cooke California, Inc., and Castle & Cooke Madera, Inc.).

DATED:  December 20, 2005

GIBSON, DUNN & CRUTCHER LLP
James J. Moloney
William E. Thomson
Michael E. Byerts

By:  _____/s/ Michael Byerts_____
        Michael E. Byerts

Attorneys for Plaintiffs CASTLE & COOKE MADERA, INC., a California corporation; CASTLE & COOKE CALIFORNIA, INC., a California corporation; AG 1970, INC., a California corporation, and AG 1971, INC., a California corporation

10905083_4.DOC

COMPLAINT FOR:  (1) STATUTORY INTERPLEADER; AND (2) DECLARATORY AND INJUNCTIVE RELIEF

Gibson, Dunn & Crutcher LLP