JOHN A. CASE, JR. (126671)
LAW OFFICES OF JOHN A. CASE, JR.
1880 Century Park East, Suite 516
Los Angeles, California 90067
(310) 203-3911, fax (310) 203-3915
jcase@CaseWebLaw.com

Attorneys for Defendants
BARBARA J. HERROLD, an individual;
LASALLE BANK N.A., solely as Trustee
of the LILA M. RADWAY TRUST and not
individually; ELLEN R. DONNER, an
individual, as Personal Representative
of the ESTATE of ALEX DONNER; JOHN L.
FRENCH, an individual, as Personal
Representative of the ESTATE OF HOWARD
H. FITZGERALD II; and ANCHOR TRUST, a
division of Anchor Bank, West St. Paul, N.A.,
as Corporate Trustee of the ROBERT E.
HAUGAN TRUST

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASTLE & COOKE MADERA, INC., a California corporation, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> MACKENZIE PATTERSON FULLER, INC., a California corporation, *et al.*, <br><br> Defendants. <br> BARBARA J. HERROLD, an individual; LASALLE BANK N.A., solely as Trustee of the LILA M. RADWAY TRUST and not individually; ELLEN R. DONNER, an individual, as Personal Representative of the ESTATE of ALEX DONNER; JOHN L. FRENCH, an individual, as Personal Representative of the ESTATE OF HOWARD H. FITZGERALD II; and ANCHOR TRUST, a division of Anchor Bank, West St. Paul, N.A., as | CASE NO. C-05-5278-WHA <br><br> CROSS-CLAIM FOR DECLARATORY RELIEF <br><br> DEMAND FOR JURY TRIAL |

| | |
|---|---|
| 1 | Corporate Trustee of the ROBERT E. HAUGAN TRUST, |
| 2 | |
| 3 | Cross-Claimants, |
| 4 | v. |
| 5 | MACKENZIE PATTERSON FULLER, INC., a California corporation; SUTTER OPPORTUNITY FUND 3, LLC, a California limited liability company; MP FALCON FUND, LLC, a California limited liability company; MP FALCON GROWTH FUND 2, LLC a California limited liability company; MPF DEWAAY PREMIER FUND LLC, a California limited liability company; MP INCOME FUND 17, LLC, a California limited liability company; MPF INCOME FUND 20, LLC, a California limited liability company; MP INCOME FUND 12, LP, a California limited partnership; MP VALUE FUND 6, LLC, a California limited liability company; MACKENZIE PATTERSON SPECIAL FUND 6, LLC, a California limited liability company; MACKENZIE PATTERSON SPECIAL FUND 6-A, LLC, a California limited liability company; MACKENZIE PATTERSON SPECIAL FUND 7, LLC, a California limited liability company; ACCELERATED HIGH YIELD INSTITUTIONAL FUND, LTD, LP, a California limited partnership; ACCELERATED HIGH YIELD INSTITUTIONAL INVESTORS, LTD, LP, a California limited partnership; MACKENZIE SPECIFIED INCOME FUND, LP, a California limited partnership, and ROES 1 through 50, inclusive, |
| | Cross-Defendants. |

For their Cross-Claim for Declaratory Relief herein, defendants and cross-claimants BARBARA J. HERROLD, an individual; LASALLE BANK N.A., solely as Trustee of the LILA M. RADWAY TRUST and not individually; ELLEN R. DONNER, an individual, as Personal Representative of the ESTATE of ALEX DONNER; JOHN L. FRENCH, an individual, as Personal Representative of the ESTATE OF HOWARD H. FITZGERALD II; and ANCHOR TRUST, a division of Anchor Bank, West St. Paul, N.A., as Corporate Trustee of the ROBERT E. HAUGAN TRUST, allege, based upon their own personal knowledge or upon information and belief as to matters not within their own personal knowledge, as follows:

**PARTIES**

1. Cross-claimant Barbara J. Herrold ("Herrold") is an individual residing in the State of Indiana.

2. Cross-claimant LaSalle Bank N.A. ("LaSalle") is a financial institution chartered by the Office of the Comptroller of the Currency, with its principal place of business in the State of Illinois. LaSalle Bank is Trustee of the Lila M. Radway Trust ("Radway").

3. Cross-claimant Ellen R. Donner ("Donner") is an individual residing in the State of Maryland. Donner is personal representative of the Estate of Alex Donner ("Alex Donner").

4. Cross-claimant John L. French ("French") is an individual residing in the State of Maine. French is the personal representative of the Estate of Howard H. Fitzgerald II ("Fitzgerald"), an individual who resided in the State of Maine until his death.

5. Cross-claimant Anchor Trust is a division of Anchor Bank, West St. Paul, N.A. ("Anchor") and has its principal place of business in the State of Minnesota. Anchor Bank, West St. Paul, N.A. is a financial institution chartered by the Office of the Comptroller of the Currency, with its principal

place of business in the State of Minnesota. Anchor is Corporate Trustee of the Robert E. Haugan Trust ("Haugan").

6. Cross-defendant MacKenzie Patterson Fuller, Inc. ("MPF") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

7. Cross-defendant Sutter Opportunity Fund 3, LLC ("Sutter Opportunity") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

8. Cross-defendant MP Falcon Fund, LLC ("MP Falcon Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

9. Cross-defendant MP Falcon Growth Fund 2, LLC ("MP Falcon Growth Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

10. Cross-defendant MPF DeWaay Premier Fund LLC ("MPF DeWaay") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

11. Cross-defendant MP Income Fund 17, LLC ("MP Income Fund 17") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

12. Cross-defendant MPF Income Fund 20, LLC ("MP Income Fund 20") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

13. Cross-defendant MP Income Fund 12, LP ("MP Income Fund 12") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

14. Cross-defendant MP Value Fund 6, LLC ("MP Value Fund 6") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

15. Cross-defendant MacKenzie Patterson Special Fund 6, LLC ("Special Fund 6") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

16. Cross-defendant MacKenzie Patterson Special Fund 6-A, LLC ("Special Fund 6-A") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

17. Cross-defendant MacKenzie Patterson Special Fund 7, LLC ("Special Fund 7") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

18. Cross-defendant Accelerated High Yield Institutional Fund, Ltd, LP ("Accelerated High Yield Institutional Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

19. Cross-defendant Accelerated High Yield Institutional Investors, Ltd, LP ("Accelerated High Yield Institutional Investors Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

20. Cross-defendant MacKenzie Specified Income Fund, LP, ("MacKenzie Specified Income Fund") is a business entity organized under the laws of the State of California, with its principal place of business in the State of California.

21. The true names and capacities of the cross-defendants named herein as Roes 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are not known to cross-claimants and said cross-defendants, therefore, are sued under such fictitious names. Cross-claimants

will seek leave of Court, if necessary, to amend this Cross-Claim to show the true names and capacities when the same have been ascertained.

22. Cross-defendants MPF; Sutter Opportunity Fund; MP Falcon Fund; MP Falcon Growth Fund 2; MPF Dewaay, MP Income Fund 17; MPF Income Fund 20; MP Income Fund 12; MP Value Fund 6; Special Fund 6; Special Fund 6-A; Special Fund 7; Accelerated High Yield Institutional Fund; Accelerated High Yield Institutional Investors; MacKenzie Specified Income Fund, LP, are all entities affiliated with Mackenzie Patterson Fuller, Inc., and accordingly are referred to collectively as "MPF & Affiliates."

23. Cross-claimants are all individuals or entities that have been investors in the partnership interests at stake in this litigation, and accordingly are sometimes referred to collectively herein as the "Individual Owners."

## **FACTUAL ALLEGATIONS**

24. In 1970, Apache Corporation formed a Minnesota partnership, Apache Grove Land Program 1970 ("Apache Grove Land 1970"), to own, operate, and develop land in Madera County, California initially for agricultural use.

25. AG 1970, Inc. has been the managing partner of Apache Grove Land 1970 since at least 1987.

26. Herrold and Radway (collectively, the "1970 Owners") acquired partnership units in Apache Grove Land 1970.

27. In 1971, Apache Corporation formed a Minnesota partnership, Apache Grove Land Program 1971 ("Apache Grove Land 1971"), to own, operate, and develop land in Madera County, California initially for agricultural use.

28. AG 1971, Inc. has been the managing partner of Apache Grove Land 1971 since at least 1987.

29. Haugan, Alex Donner, and Fitzgerald (collectively, the "1971 Owners") acquired partnership units in Apache Grove Land 1971.

30. On or about September 27, 2004, MPF and unidentified "affiliates" made a purported tender offer to the holders of partnership interests in Apache Grove Land 1970, including the 1970 Owners. MPF & Affiliates offered to purchase the interests for the price of $32,500 per unit – a small fraction of the appraised value of the units ("First Apache Grove Land 1970 Tender Offer").

31. Also on or about September 27, 2004, MPF, and its unidentified "affiliates" made a purported tender offer to the holders of partnership interests in Apache Grove Land 1971, including the 1971 Owners. MPF & Affiliates offered to purchase their interests for the price of $18,000 per unit – a small fraction of the appraised value of the units ("First Apache Grove Land 1971 Tender Offer").

32. These tender offers expired at midnight on October 29, 2004.

33. MPF & Affiliates contend that, in response to the First Apache Grove Land 1970 Tender Offer, the 1970 Owners agreed to sell their partnership units in Apache Grove Land 1970 to MPF & Affiliates. MPF & Affiliates further contend that, in response to the First Apache Grove Land 1971 Tender Offer, the 1971 Owners agreed to sell their partnership units in Apache Grove Land 1971 to MPF & Affiliates.

34. Cross-claimants contend that any alleged assignments are legally invalid and fraudulently induced, that cross-claimants timely revoked, rescinded, or withdrew their approval of alleged assignments, and that there was a failure of consideration on the part of MPF & Affiliates in connection with any alleged assignments, among other serious defects in the alleged assignments as set forth herein.

35. On or about September 28, 2004, MPF notified AG 1970, Inc. and AG 1971, Inc. ("Managing Partners") that it intended at some point to make a

tender offer for partnership units in Apache Grove Land 1970 and Apache Grove Land 1971. MPF never notified the Managing Partners that it had made a tender offer, and never sent the Managing Partners copies of the tender offer documents.

36. On or about October 25, 2004, the Managing Partners received from MPF purported assignment forms from some or all of the Individual Owners.

37. When the Managing Partners reviewed the First Apache Grove Land 1970 Tender Offer, and the First Apache Grove Land 1971 Tender Offer (collectively "First Tender Offers"), they noticed numerous, serious omissions and other problems in each that rendered the First Tender Offers invalid under the federal securities laws governing such tender offers.

38. Without limitation, those omissions and other problems included the fact that the First Tender Offers failed to disclose, or only inadequately disclosed:

    a. The identity of the true bidder. Instead, they stated only that unidentified MPF "affiliates" were the buyers.

    b. The methodology used to determine the purchase price offered.

    c. The prices at which recent sales of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 had been made.

    d. Whether owners of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 could withdraw their tenders, and whether they could withdraw following an extension of the deadline for the First Tender Offers.

    e. Whether tendered partnership units would be accepted on a pro rata basis if the First Tender Offers were over-subscribed.

    f. That Apache Grove Land 1970 and Apache Grove Land 1971 would send the owners of partnership units additional materials relating to the First Tender Offers.

    g. The circumstances under which the First Tender Offers could be extended.

    h. An adequate timeline for the payment of tendered units.

    i. The risks of the transaction in the First Tender Offers.

    j. The specific plans that MPF and its unidentified affiliates had if the target number of units were tendered.

    k. The information required by Items 14 and 15 of Securities & Exchange Commission Form S-11.

    l. The relevant tax consequences of the First Tender Offers.

    m. The amount of any transfer or processing fees that the actual bidders would pay MPF or that would be deducted from the purchase price.

  39. The First Tender Offers also suffered from the following additional deficiencies:

    a. They did not summarize the Managing Partner's reports detailing the valuation of the property owned by Apache Grove Land 1970 and Apache Grove Land 1971, or even disclose how to obtain copies of those reports.

    b. The assignment forms attached to the First Tender Offers contained a purported agreement to submit to binding arbitration. Such agreements are against public policy and invalid in this context. The assignment forms attached to the First Tender Offers contained a purported agreement that the arbitrator would apply California law in connection with the binding arbitration agreement. But federal securities law applies to disputes arising from the First Tender Offers, which preempts California law.

  40. The foregoing deficiencies violate the federal securities laws governing the First Tender Offers, including the Securities Exchange Act of

1934 ("Exchange Act") section 10(b) [15 U.S.C. § 78j(b) (2000)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5 (1951)], Exchange Act § 14(e) [15 U.S.C. § 78n(e) (1998)] and Rule 14e-1 promulgated thereunder [17 C.F.R. §240.10e-1 (1999)], as explicated by the Securities & Exchange Commission's July 24, 2000 Interpretive Release on Mini-Tender Offers and Limited Partnership Tender Offers.

41. In or about November 2004, cross-defendants MacKenzie Patterson, MP Falcon Fund, MP Falcon Growth Fund, MPF DeWaay, MP Income Fund 17, MP Income Fund 20, MP Income Fund 12, MP Value Fund 6, Special Fund 6, Special Fund 6-A, Special Fund 7, Accelerated High Yield Institutional Fund, Accelerated High Yield Institutional Investors Fund, and MacKenzie Special Income Fund (collectively "Initial MPF Buyers"), sent a letter to the holders of partnership units in Apache Grove Land 1970, including the 1970 Owners, purporting to extend the First Apache Grove Land 1970 Tender Offer to November 30, 2004 ("November 2004 Apache Grove Land 1970 Extension").

42. In or about November 2004, the Initial MPF Buyers sent a letter to the holders of partnership units in Apache Grove Land 1971, including the 1971 Owners, purporting to extend the First Apache Grove Land 1971 Tender Offer to November 30, 2004 ("November 2004 Apache Grove Land 1971 Extension").

43. When the Managing Partners reviewed the November 2004 Apache Grove Land 1970 Extension and the November 2004 Apache Grove Land 1971 Extension (collectively "November 2004 Extensions"), they noticed several deficiencies in each that rendered the purported extensions of the First Tender Offers invalid. Without limitation, those deficiencies included:

a. The November 2004 Extensions were not issued by 9 a.m., Eastern Time on the next business day after the First Tender Offers expired

(i.e., October 30, 2004), accordingly, under federal securities laws, the First Tender Offers had expired and could not be "extended." 17 C.F.R. §240.10e-1(d).

      b. The purported extensions had not been publicized as required under the federal securities laws. 17 C.F.R. §240.10e-1(d).

      c. The November 2004 Extensions did not disclose the number of units tendered in response to the First Tender Offers.

      d. The November 2004 Extensions did not disclose the identity of the true bidder. Although listing all of the Initial MPF Buyers, the November 2004 Extensions did not disclose who owned those entities, the source of the funds to be used, or whether any of the Initial MPF Buyers had agreed to sell tendered units to another party.

      e. The November 2004 Extensions did not disclose whether the capital and funds allegedly available for purchase of tendered units was held in liquid assets, or some other form. And the November 2004 Extensions did not indicate whether the Initial MPF Buyers had distinct funds available for each of the First Tender Offers or whether the November 2004 Extensions referred to the same funds.

      f. The November 2004 Extensions did not disclose how units tendered would be allocated among the Initial MPF Buyers.

      g. The November 2004 Extensions did not attach the assignment forms and transmittal letters that MPF included in the First Tenders Offers.

44. The foregoing deficiencies violate the federal securities laws governing the November 2004 Extensions, including Exchange Act section 10(b) [15 U.S.C. § 78j(b) (2000)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5 (1951)], Exchange Act § 14(e) [15 U.S.C. § 78n(e) (1998)] and Rule 14e-1 promulgated thereunder [17 C.F.R. §240.10e-1 (1999)], as explicated by the Securities & Exchange Commission's July 24,

2000 Interpretive Release on Mini-Tender Offers and Limited Partnership Tender Offers.

45. On or about December 16, 2004, MPF informed the Managing Partners that it contended the Individual Owners had agreed to transfer their partnership units to the Initial MPF Buyers.

46. The Initial MPF Buyers further requested that the Managing Partners recognize MP Falcon Growth Fund as the owner of units of Apache Grove Land 1970 allegedly transferred from the 1970 Owners, and recognize MP Falcon Fund as the owner of units of Apache Grove Land 1971 allegedly transferred from the 1971 Owners.

47. When the Managing Partners reviewed the transfer documents from the First Apache Grove Land 1970 Tender Offer and the First Apache Grove Land 1971 Tender Offer, they concluded that the purported transfers were not valid because they had numerous deficiencies and errors in addition to the legal deficiencies in the tender offers identified above. Without limitation, those additional deficiencies included:

   a. misspelled or incorrect names of unitholders;
   b. incorrect taxpayer identification numbers or social security numbers;
   c. failure to state the number of units tendered to the Initial MPF Buyers;
   d. incorrect statement of the number of units tendered;
   e. assignments dated after the First Tender Offers expired.
   f. no proof that the person signing the assignment had the authority to approve the assignment;
   g. apparently altered documents; and
   h. submission of transfer documents from people who no longer owned any units.

48. After receiving notice of the First Tender Offers and the November 2004 Extensions, the Managing Partners notified MPF of the deficiencies identified above in the First Tender Offers, the November 2004 Extensions and the assignments that MPF had submitted to the Managing Partners.

49. On or about June 29, 2005, the Initial MPF Buyers and Sutter Opportunity (collectively "MPF & Affiliates") made a second purported tender offer to the holders of limited partnership interests in Apache Grove Land 1970, including the 1970 Owners, to purchase their interests for the price of $32,500 per unit ("Second Apache Grove Land 1970 Tender Offer") – again, a small fraction of the appraised value of the partnership units.

50. On or about June 29, 2005, MPF & Affiliates made a second purported tender offer to the holders of limited partnership interests in Apache Grove Land 1971, including the 1971 Owners, to purchase their interests for the price of $18,000 per unit ("Second Apache Grove Land 1971 Tender Offer") – again, a small fraction of the appraised value of the partnership units.

51. MPF & Affiliates sent letters and/or made oral statements to the 1970 Owners and the 1971 Owners who had tendered their shares to MPF & Affiliates in the First Apache Grove Land 1970 Tender Offer and the First Apache Grove Land 1971 Tender Offer that stated or implied that the 1970 Owners and the 1971 Owners were legally required to re-tender their partnership units to MPF & Affiliates in connection with the Second Apache Grove Land 1970 Tender Offer and Second Apache Grove Land 1971 Tender Offer.

52. MPF & Affiliates contend that certain of the 1970 Owners and the 1971 Owners re-tendered their partnership units in Apache Grove Land 1970 and Apache Grove Land 1970 in response to the Second Apache Grove Land 1970 Tender Offer and the Second Apache Grove Land 1971 Tender Offer.

53. Cross-claimants contend that any alleged assignments in response to the Second Apache Grove Land 1970 Tender Offer and the Second Apache Grove Land 1971 Tender Offer are legally invalid and unenforceable, for the reasons described above and also because cross-defendants' statements in connection with the Second Tender Offers said or implied that they were legally required to re-tender their interests.

54. In connection with the 2004 Annual Report on Apache Grove Land 1970 and Apache Grove Land 1971, an independent appraisal was conducted of the value of the land owned by Apache Grove Land 1970 and Apache Grove Land 1971, which consists of land developed for agricultural purposes, some of which is earmarked for development.

55. Apache Grove Land 1970 owned approximately 2,449 acres of land as of December 31, 2004. The independent appraisal concluded that the land held by the Apache Grove Land 1970 partnership was worth $109,854 per partnership unit. The appraised value of Apache Grove Land 1970's land and other tangible assets, when combined with certain balance sheet adjustments yielded a total valuation of the units of $121,919 per unit.

56. Apache Grove Land 1971 owned approximately 1,855 acres as of December 31, 2004. The independent appraisal concluded that the land held by the Apache Grove Land 1971 partnership was worth $72,596 per partnership unit. The appraised value of Apache Grove Land 1971's land and other tangible assets, when combined with certain balance sheet adjustments yielded a total valuation of the units of $78,757 per unit.

57. As a result of the appraisals of Apache Grove Land 1970 and Apache Grove Land 1971, the Managing Partners concluded that the partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 were worth substantially more than MPF was offering in its tender offers.

58. Consequently, on or about July 13, 2005, the Managing Partners sent a letter to the owners of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 notifying them that their units were worth substantially more than MPF was offering. The Managing Partners therefore recommended that the recipients reject MPF's tender offers. In addition, the Managing Partners notified the owners of partnership units that Castle & Cooke California or one of its affiliates would be making a tender offer of its own that would be significantly more attractive than the offer of MPF & Affiliates.

59. On or about July 25, 2005, Castle & Cooke California sent a letter to the owners of partnership units in Apache Grove Land 1970 and Apache Grove Land 1971 that it intended to make a tender offer for those interests at their full value.

60. On or about August 17, 2005, Castle & Cooke Madera, an affiliate of Castle & Cooke California, made a tender offer to the owners of partnership units in Apache Grove Land 1970, to purchase their interests for the appraised value of each unit: $121,919 per unit ("Castle & Cooke Apache Grove Land 1970 Tender Offer"). These are the same units that MPF & Affiliates offered to purchase for $32,500 per unit.

61. On or about August 17, 2005, Castle & Cooke Madera made a tender offer to the owners of partnership units in Apache Grove Land 1971, to purchase their interests for the appraised value of each unit: $78,757 per unit ("Castle & Cooke Apache Grove Land 1971 Tender Offer"). These are the same units that MPF & Affiliates offered to purchase for $18,000 per unit.

62. In response to the Castle & Cooke Apache Grove Land 1970 Tender Offer, Castle & Cooke Madera received purported tenders for, among others, the same partnership units in Apache Grove Land 1970 from both MPF and the 1970 Owners.

63. In response to the Castle & Cooke Apache Grove Land 1971 Tender Offer, Castle & Cooke Madera received purported tenders for the same partnership units in Apache Grove Land 1971 from both MPF & Affiliates and the 1971 Owners.

64. Because of the serious omissions, defects, and improprieties set forth above, the alleged assignments that MPF & Affiliates have tendered to Castle & Cooke Madera in connection with cross-claimants' partnership interests are legally invalid and unenforceable.

## **FIRST CLAIM FOR RELIEF**

(Declaratory Relief)

65. Cross-claimants hereby incorporate by reference paragraphs 1 through 64 above, as if fully set forth herein.

66. There currently exists an actual controversy between cross-claimants and cross-defendants, in that cross-defendants dispute cross-claimants' ownership, tenders, and right to payment by Castle & Cooke Madera for their partnership interests in Apache Grove Land 1970 and Apache Grove Land 1971.

67. Accordingly, cross-claimants are entitled to a declaratory judgment of this Court, declaring that they are the rightful owners of their partnership interests in Apache Grove Land 1970 and Apache Grove Land 1971 and are entitled to collect all the proceeds of the Castle & Cooke Apache Grove Land 1970 Tender Offer and Castle & Cooke Apache Grove Land 1971 Tender Offer, according to proof.

WHEREFORE, cross-claimants pray for judgment in their favor and against cross-defendants as follows:

1. That this Court enter judgment declaring that cross-claimants are the rightful owners of their partnership interests in Apache Grove Land 1970

and Apache Grove Land 1971 and are entitled to collect all the proceeds of the Castle & Cooke Apache Grove Land 1970 Tender Offer and Castle & Cooke Apache Grove Land 1971 Tender Offer for their partnership interests, according to proof.

2. That this Court award cross-claimants their costs of suit and attorney's fees incurred herein.

3. That this Court order such other and further relief as it may deem just and proper.

DATED: March 23, 2006         LAW OFFICES OF JOHN A. CASE, JR.


By:_____/s/_____.
        John A. Case, Jr.

Attorneys for Defendants

BARBARA J. HERROLD, an individual; LASALLE BANK N.A., solely as Trustee of the LILA M. RADWAY TRUST and not individually; ELLEN R. DONNER, an individual, as Personal Representative of the ESTATE of ALEX DONNER; JOHN L. FRENCH, an individual, as Personal Representative of the ESTATE OF HOWARD H. FITZGERALD II; and ANCHOR TRUST, a division of Anchor Bank, West St. Paul, N.A., as Corporate Trustee of the ROBERT E. HAUGAN TRUST

# DEMAND FOR JURY TRIAL

Cross-claimants BARBARA J. HERROLD, an individual; LASALLE BANK N.A., solely as Trustee of the LILA M. RADWAY TRUST and not individually; ELLEN R. DONNER, an individual, as Personal Representative of the ESTATE of ALEX DONNER; JOHN L. FRENCH, an individual, as Personal Representative of the ESTATE OF HOWARD H. FITZGERALD II; and ANCHOR TRUST, a division of Anchor Bank, West St. Paul, N.A., as Corporate Trustee of the ROBERT E. HAUGAN TRUST, hereby demand a trial by jury.

DATED: March 23, 2006        LAW OFFICES OF JOHN A. CASE, JR.


By: _____/s/_____.
         John A. Case, Jr.

Attorneys for Defendants

BARBARA J. HERROLD, an individual; LASALLE BANK N.A., solely as Trustee of the LILA M. RADWAY TRUST and not individually; ELLEN R. DONNER, an individual, as Personal Representative of the ESTATE of ALEX DONNER; JOHN L. FRENCH, an individual, as Personal Representative of the ESTATE OF HOWARD H. FITZGERALD II; and ANCHOR TRUST, a division of Anchor Bank, West St. Paul, N.A., as Corporate Trustee of the ROBERT E. HAUGAN TRUST