United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASTLE & COOKE MADERA, INC., CASTLE & COOKE CALIFORNIA, INC., AG 1970, INC., AG 1971, INC.; <br><br> Plaintiffs, <br><br> v. <br><br> MACKENZIE PATTERSON FULLER, INC.; SUTTER OPPORTUNITY FUND 3, LLC; MP FALCON FUND, LLC; MP FALCON GROWTH FUND 2, LLC; MPF DEWAAY PREMIER FUND LLC; MP INCOME FUND 17, LLC; MPF INCOME FUND 20, LLC; MP INCOME FUND 12, LP; MP VALUE FUND 6, LLC; MACKENZIE PATTERSON SPECIAL FUND 6, LLC; MACKENZIE PATTERSON SPECIAL FUND 6-A, LLC; MACKENZIE PATTERSON SPECIAL FUND 7, LLC; ACCELERATED HIGH YIELD INSTITUTIONAL FUND, LTD.; ACCELERATED HIGH YIELD INSTITUTIONAL INVESTORS, LTD.; MACKENZIE SPECIFIED INCOME FUND, LP; LEON G. FETERL and MARILYN R. FETERL, trustees of the LEON G. FETERL LIVING TRUST; CHRISTOPHER HAYES; WALTER HAYES III; BARBARA J. HERROLD; LASALLE NATIONAL TRUST, executor of the ESTATE OF LILA RADWAY; ALEX DONNER; JOHN L. FRENCH, personal representative of the ESTATE OF HOWARD H. FITZGERALD II; ANCHOR TRUST, trustee of the ROBERT E. HAUGAN REVOCABLE TRUST; GREGORY J. GUGGEMOS, trustee of the WILBUR C. HERBST TRUST; PARAMOUNT COFFEE CO.; MARTIN | No. C 05-05278 WHA <br><br> **ORDER COMPELLING ARBITRATION AND STAYING LITIGATION IN PART** |

SCHLISSBERG, trustee of the ISF/PCC
TRUST PARAMOUNT COFFEE CO; and
DOES 1–10,

    Defendants.
                                                    /

## INTRODUCTION

The instant motion is brought by certain defendants led by MacKenzie Patterson Fuller, Inc.[1] They petition for an order compelling arbitration between themselves and cross-claimants.[2] The MacKenzie defendants also move to stay this litigation pending arbitration. They have met the requirements for an order compelling arbitration. The petition therefore is **GRANTED**. A stay of the action as to the claims, defenses and issues that will be arbitrated is **GRANTED**. The request to stay the rest of the action is **DENIED**, in order to allow plaintiffs to bring a motion for discharge.

## STATEMENT

This interpleader action concerns a dispute over who owns units in two partnerships, called Apache Grove Land Program 1970 and Apache Grove Land Program 1971. The partnerships control over 4,300 acres of land in Madera County, California.[3]

In 2004 and 2005, the MacKenzie defendants, a group of affiliated real-estate investment concerns, made tender offers for partnership units. Those tender offers are alleged to have been defective by cross-claimants and also by plaintiffs Castle & Cooke California, Inc.,

---

[1] This group also includes Sutter Opportunity Fund 3, LLC; MP Falcon Fund, LLC; MP Falcon Growth Fund 2, LLC; MPF Dewaay Premier Fund LLC; MP Income Fund 17, LLC; MPF Income Fund 20, LLC; MP Income Fund 12, LP; MP Value Fund 6, LLC; MacKenzie Patterson Special Fund 6, LLC; MacKenzie Patterson Special Fund 6-A, LLC; MacKenzie Patterson Special Fund 7, LLC; Accelerated High Yield Institutional Fund, Ltd.; Accelerated High Yield Institutional Investors, Ltd. and Mackenzie Specified Income Fund, LP.

[2] The cross-claimants are Leon G. Feterl and Marilyn R. Feterl, trustees of the Leon G. Feterl Living Trust; Barbara J. Herrold; LaSalle National Trust, executor of the estate of Lila Radway; Alex Donner; John L. French, personal representative of the estate of Howard H. Fitzgerald II; and Anchor Trust, trustee of the Robert E. Haugan Revocable Trust. The other defendants against whom the MacKenzie defendants bring the instant petition are Christopher Hayes; Walter Hayes III; Gregory J. Guggemos, trustee of the Wilbur C. Herbst Trust; Paramount Coffee Co.; and Martin Schlissberg, trustee of the ISF/PPC Trust Paramount Coffee Co.

[3] All facts are taken from the complaint, unless otherwise noted.

2

1  Castle & Cooke Madera, Inc., AG 1970, Inc., and AG 1971, Inc.[4] They claim that the
2  assignments made pursuant to the MacKenzie offers are void. Under that theory, ownership of
3  the units remains with the original owners. These original owners include the cross-claimants.
4  After the MacKenzie offers, the Castle & Cooke companies, which are land-development
5  concerns, made their own tender offer for partnership units.

6  Plaintiffs now assert that they are faced with the possibility of multiple claimants on the
7  Castle & Cooke tender offer. They claim that the original owners want payment. In addition,
8  they allege that the McKenzie defendants may claim that they acquired the units through their
9  own tender offers, thus entitling them to payment under Castle & Cooke's tender offer.
10 Plaintiffs therefore brought this interpleader action for a ruling as to which defendants the
11 money must be paid. Plaintiffs also seek injunction against prosecution of a pending California
12 Superior Court action that concerns many of the same issues as this action does, and a
13 preventative injunction barring the MacKenzie defendants from bringing any further litigation
14 on these issues. Some of the original owners filed a cross-claim, seeking a declaration that their
15 purported assignments to the MacKenzie defendants were invalid.

16 The MacKenzie defendants now move for an order pursuant to the Federal Arbitration
17 Act mandating arbitration of the disputes over the alleged assignments of the partnership units.
18 They seek to stay this litigation pending an end to the arbitration. They claim that, once the
19 rights are arbitrated, there will be no further controversy because it will be clear to whom
20 payment on Castle & Cooke's tender offers will be due (Br. 2). The motion is opposed by some
21 of the cross-claimants and by plaintiffs. MacKenzie replied only to cross-claimants' opposition
22 brief but not to that filed by plaintiffs.[5]

23 Each cross-claimant and non-MacKenzie defendant signed an assignment agreement
24 with at least one of the MacKenzie defendants (Patterson Decl. ¶¶ 3, 7; Exhs. A–B; Patterson

---

[4] AG 1970, Inc. and AG 1971, Inc. are the managing partners. They are controlled by Dole Food Co., the fruit and vegetable enterprise.

[5] The cross-claimants that oppose this motion are Leon G. Feterl and Marilyn R. Feterl, trustees of the Leon G. Feterl Living Trust; Barbara J. Herrold; LaSalle Bank, N.A., as trustee of the Lila M. Radway Trust; Ellen Donner, personal representative of the estate of Alex Donner; John L. French, personal representative of the estate of Howard H. Fitzgerald II; and Anchor Trust, trustee of the Robert E. Haugan Trust.

3

1 Supp. Decl. ¶¶ 1–8, Exhs. A–H). Agreements related to MacKenzie's first tender offer contain
2 this provision:

> Arbitration Agreement: The Purchaser and Seller agree that any dispute, claim or controversy arising out of a purchase of Units shall be resolved by submission to binding arbitration in Oakland, California before a retired judge or justice and the two persons so-named shall select a neutral judge or justice who will act as the sole arbitrator. The arbitrator selected shall agree to follow California law. The parties shall be entitled to take discovery in accordance with the provisions of the California Code of Civil Procedure, but either party may request that the arbitrator limit the amount and scope of such discovery and in determining whether to do so, the arbitrator shall balance the need for this discovery against the parties' mutual desire to resolve all disputes expeditiously and inexpensively. The arbitrator shall follow California law and shall render his or her decision in writing, explaining the legal and factual basis for decision as to each of the principal controverted issues. The arbitrator's decision shall be final and binding upon the parties. A judgment upon any award may be entered in a court of competent jurisdiction. Prevailing party shall be entitled to reimbursement of reasonable expenses including but not limited to attorney fees and filing fees.

(Patterson Decl. ¶ 2; Exh. A).

A similar arbitration clause was in included in the standard assignment form distributed as part of MacKenzie's second tender offer. It was substantially identical to the arbitration clause connected with the first offer (all substantive changes are in bold):

> Arbitration Agreement: The Purchaser and Seller agree that any dispute, claim or controversy arising out of a purchase of Units shall be resolved by submission to binding arbitration in Oakland, California before an arbitrator, who must be a retired judge or justice. **If the parties are unable to agree on an arbitrator each party shall name one arbitrator and the two persons so-named shall select a neutral arbitrator** who will act as the sole arbitrator. The arbitrator selected shall agree to follow **Federal securities laws and applicable California law, if not preempted by Federal law.** The parties shall be entitled to take discovery in accordance with the provisions of the California Code of Civil Procedure, but either party may request that the arbitrator limit the amount and scope of such discovery and in determining whether to do so, the arbitrator shall balance the need for this discovery against the parties' mutual desire to resolve all disputes expeditiously and inexpensively. The arbitrator shall follow California law and shall render his or her decision in writing, explaining the legal and factual basis for decision as to each of the principal controverted issues. The arbitrator's decision shall be final and binding upon the parties. A judgment upon any award may be entered in a court of competent jurisdiction. Prevailing party shall be entitled to reimbursement of reasonable expenses including but not limited to attorney fees and filing fees.

(Patterson Decl. ¶ 6; Exh. B).

4

**ANALYSIS**

Written agreements to arbitrate are enforceable under federal law when they involve interstate commerce, unless the agreement could be revoked at law or in equity. 9 U.S.C. 2. "A party aggrieved by the alleged failure . . . of another to arbitrate" can petition a federal court for an order compelling arbitration. If the court would have subject-matter jurisdiction over the controversy apart from the arbitration agreement, it can compel arbitration. Such an order must issue if there is no issue as to the "making of the agreement . . . or the failure to comply." 9 U.S.C. 4.

A court's role in considering a petition to compel arbitration is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Even when only some of the claims involved in a civil action are arbitrable, a proper petition to compel arbitration must be granted. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

**1.    WHETHER A VALID AGREEMENT TO ARBITRATE EXISTS.**

MacKenzie has presented copies of assignment agreements that include arbitration clauses and are signed by cross-claimants Marilyn Feterl, Barbara Herrold, LaSalle National Trust, Anchor Trust, Alex Donner and John L. French and by defendants Walter Hayes III, Christopher Hayes and Gregory Guggemos. MacKenzie also submitted a declaration stating that the following additional defendants also signed assignment agreement containing arbitration clauses: Paramount Coffee Co. and Martin Schlissberg (Patterson Decl. ¶¶ 3, 7, Exh. B; Patterson Supp. Decl. ¶¶ 1–8, Exhs. A–H). It did not submit copies of the agreements as to these last two but neither of them challenges the petition. This accounts for all original owners who are named in this lawsuit.

5

The cross-claimants and defendants who oppose the petition allege that there is no evidence of their intent to arbitrate (Opp. 4–6). They claim that the lack of a signature on the same page as the arbitration clause invalidates it. There is no requirement that a signature (or initials) appear on the same page as the arbitration clause so long as the agreement itself was signed. In any case, the signatures did appear on the same sheet of paper as the arbitration agreement — it was on the reverse side (Patterson Supp. Decl. ¶¶ 1–8). The cross-claimants and defendants do not identify any authority purporting to create a rule that the signature or initials must be on the same page as the clause. Nor do any of these cross-claimants or defendants actually contest that they agreed to the arbitration clause. This argument therefore is unpersuasive.

They also claim that there is no evidence of an agreement by Barbara Herrold, LaSalle National Trust, Anchor Trust and John L. French (Opp. 6–9). They are incorrect. The evidence consists of authenticated copies of the agreements, and a declaration that states that the cross-claimants signed them.

One defendant, Alex Donner, has died since execution of agreement. Ellen Donner, the late man's daughter, is his heir and a personal representative of his estate (Donner Decl. ¶¶ 1, 3–4, Exh. A). She requested that she be substituted for him as a defendant in this action and filed a cross-claim (Answer ¶ 27; Cross-Claim).

She denies that she is bound by the arbitration agreement on the ground that she did not sign it. For this contention, she relies upon a non-controlling decision, *Buckner v. Tamarin*, 98 Cal. App. 4th 140 (Cal. Ct. App. 2002). In *Bruckner*, a man agreed with his physician to arbitrate claims arising out of his medical care. The agreement purported to bind claims brought by the patient's heirs. The man died following surgery by the physician. The dead man's heirs, his adult children, sued the doctor for wrongful death. The court held that the children were not bound by the arbitration agreement because they were not parties to it and because they did not fit into any of several categories of heirs who can be bound by a decedent. *Id.* at 141–43. In *Bruckner*, the relevant claims belonged to the late patient's children in their own right. In this action, Ellen Donner appears only as a personal representative of Alex

6

Donner's estate (*see* Answer ¶ 27; Cross-Claim 1, ¶ 3). The cross-claims and defenses she asserts are for the benefit of the estate. The estate *is* bound by Alex Donner's signature. She therefore cannot the deny the application of the agreement to her in her capacity as a personal representative of the estate. Furthermore, Alex Donner agreed that his obligations under the assignment agreement would be "binding upon [his] heirs [and] personal representatives" (Assignment Agreement, Patterson Supp. Decl. ¶ 4, Exh. A).

Marilyn Feterl and Leon Feterl challenge the validity of the arbitration agreement as to them on the ground that "there is no evidence" that Marilyn Feterl signed the assignment agreement in her capacity as a trustee of the Leon G. Feterl Living Trust, which was the owner of the partnership units supposedly assigned to MacKenzie. She thus suggests that she can be required to arbitrate this dispute in her personal capacity but not in her capacity as trustee. She does not claim, however, that she ever owned any partnership unit in her personal capacity. Nor does she deny that she signed the agreement as a trustee, that she is a trustee or that the trust owned partnership units. She simply argues that MacKenzie has failed to offer sufficient evidence to bind her as trustee (Opp. 10).

This is unpersuasive. The agreement she signed contained an arbitration clause. She is therefore subject to arbitration. Whether she must arbitrate in her personal capacity or in her representative capacity can be resolved later. For now, it may help her decide how to proceed to note that if she failed to reveal her trustee capacity when entering the agreement and failed to identify the trust in the contract, she possibly could be held personally liable on the agreement. *See* Cal. Prob. Code § 18000(a).

Cross-claimants also challenge the validity of the arbitration agreement on the ground that it is unconscionable and therefore must be revoked (Opp. 12–16). Unconscionability must have both a procedural and a substantive element. The former focuses on oppression or surprise due to unequal bargaining power; the latter on overly harsh or one-sided results. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The party challenging the validity of the arbitration clause has burden of proving unconscionability. *Nagrampa v. Mailcoups Inc.*, 401 F.3d 1024, 1027 (9th Cir. 2005).

7

Cross-claimants argue that the contract is unconscionable because it was a contract of adhesion. They fail, however, to allege a necessary element of a contract of adhesion — that one party has superior bargaining power. Furthermore, they argue no other basis for finding that the contract is procedurally unconscionable. One cannot get out of a contract simply because it is drafted and imposed by a party with superior bargaining power. A contract can only be revoked if it also does not "fall within the reasonable expectations of the weaker or 'adhering' party" and is unduly oppressive. *See Almendariz*, 24 Cal. 4th at 113. Because cross-claimants have not carried their burden of alleging any procedural unconscionability, there is no need to address their claims of substantive unconscionability. *Both* must be satisfied to revoke the contract.[6]

At the hearing, counsel for cross-claimants asked that the attorney's-fees provision in the arbitration clauses be severed from the agreements. The provision provides that the "[p]revailing party shall be entitled to reimbursement of reasonable expenses including but not limited to attorney fees and filing fees." Counsel claimed that the provisions were substantively unconscionable because they might require his clients, if they lost at arbitration, to pay fees higher than the value of their partnership units.

He raised the request for the first time at the hearing. That alone would be reason to deny it. Nevertheless, this order considers the request on its merits. The request must be denied, partly because cross-claimants did not demonstrate any procedural unconscionability. Finally, their citation of *Armendariz* is unavailing. In that case, an employer had mandated that employees agree to arbitrate disputes arising under state antidiscrimination statutes. The court held that it would frustrate the purposes of the statutes to allow enforcement of one of the arbitration provisions. That clause required employees to pay a pro rata share of the cost of the arbitrator. The court held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement . . . cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring

---

[6] Although some assignment agreements did not explicitly require the arbitrator to follow federal securities law, the arbitrator is required to do so whenever federal law preempts state law.

8

the action in court." The court's holding ensured that high costs would not deter employees from bringing discrimination claims. *Armendariz*, 24 Cal. 4th at 107–13. This rule has no applicability in the instant case. The claims are contract and securities issues unrelated to employment. The fees provision here would not frustrate any statutory scheme. Also, there is insufficient evidence to conclude that the arbitration clauses were mandatory. There is not even proof that any cross-claimant ever tried to negotiate them. The request to sever the attorney's fee provision therefore is denied.

For the reasons stated above, this order finds that there was a valid arbitration agreement as to each original owner involved in this action.

### 2. WHETHER THE AGREEMENT ENCOMPASSES THE DISPUTE AT ISSUE.

Cross-claimants also contend that the agreement does not encompass the dispute at issue. They contend that this dispute falls outside the scope of the arbitration clause because it touches on whether MacKenzie's tender offers violated federal securities law. They claim that only controversies related to interpretation and performance of the agreement are arbitrable. The arbitration clauses, however, suggest otherwise. They state that "any dispute, claim or controversy arising out of a purchase of Units" must be settled by arbitration. A dispute about the invalidity of the agreement under federal securities laws is within the scope of controversies that must be arbitrated, since it arises out of the purchase. At the least, after resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," the instant controversy is clearly within the scope of those subject to the arbitration clause. *Mitsubishi Motors Corp.*, 473 U.S. at 626.

### 3. PLAINTIFFS' ARGUMENTS.

Plaintiffs argue that some parties that would be affected by an order to compel have not been served with the petition. That argument, made on February 16, was mooted by subsequent service on all cross-claimants. All parties have now appeared in this action except Paramount Coffee Co. and Martin Schlissberg.

Plaintiffs also argue that no order should issue on the petition until after a decision on their anticipated motion to discharge under the interpleader statute. They claim that proper

9

1 interpleader procedure requires first consideration of whether to relieve plaintiff stakeholders
2 from liability, then adjudication of the adverse claims of defendants (Pls.' Opp. 4).  This Court
3 has no discretion to deny a petition to compel when all the requirements are satisfied.  "[T]he
4 court shall make an order directing the parties to proceed to arbitration" if there is no valid
5 dispute as to the making of the arbitration agreement or the failure to comply with it.  9 U.S.C.
6 4.  Plaintiffs cite for support *New York Life Insurance v. Connecticut Development Authority*,
7 700 F.2d 91, 95 (2d Cir. 1983).  This decision is neither controlling nor on point.  It did not
8 involve a petition to compel arbitration, so no potential conflict between normal interpleader
9 procedure and arbitration proceedings was addressed.  Furthermore, the Second Circuit merely
10 stated in the cited passage that "*[n]ormally* an interpleader action is concluded in two stages."
11 The decision therefore did not state any mandatory rule, even in the Second Circuit.  *Ibid.*

12 For the reasons stated above, MacKenzie has carried its burden on the petition to compel
13 arbitration.

14 **4.  MOTION FOR STAY.**

15 "In any suit . . . referable to arbitration," the court "*shall* on application of one of the
16 parties stay the trial of the action until such arbitration has been had . . . ."  9 U.S.C. 3 (emphasis
17 added).  The motion to stay is therefore mandatory and must be granted as to all matters
18 between the parties to the arbitration agreements and within the scope of those agreements.

19 It is within a district court's discretion whether to stay, for "[c]onsiderations of economy
20 and efficiency," an entire action, including issues not arbitrable, pending arbitration.  *See*
21 *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir.
22 1985) (approving of full stay).  Plaintiffs filed a claim for a declaration adjudicating the parties'
23 rights to the disputed partnership units.  All action on that claim should be stayed to avoid
24 duplicating the work of the arbitrator.  It would be unwise, however, to stay initial steps on the
25 interpleader claim.  Such a stay unnecessarily would bar plaintiffs from moving for discharge
26 and from potentially getting free of this lawsuit.  The motion for a stay as to the interpleader
27 claim and the claims seeking injunction of other court actions therefore must be denied.

1    Status reports to this Court on the progress of the arbitration will be required, however,
2 every twelve weeks, starting today. If the arbitration concludes between status reports, the
3 parties must jointly notify the Court within seven calendar days. In addition, the parties must
4 meet the following deadlines. Within forty-five days of today, they must select a final
5 arbitrator. Within nine months of today, they must complete arbitration.[7]

## CONCLUSION

For the reasons stated, the petition to compel arbitration is **GRANTED**. The motion for stay is **GRANTED IN PART AND DENIED IN PART**, as described above. The parties shall provide status reports and comply with the arbitration schedule, both as described above.

**IT IS SO ORDERED.**

Dated: May 8, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[7] These deadlines trump the inconsistent notations on the docket sheet.

11